### LUIS REYNA ET AL. v. THE STATE.

No. 3699. Decided October 20, 1915.

**1.—Theft of Cattle—Insufficiency of the Evidence—Original Taking.**

Where, upon trial of theft of cattle, there was not sufficient evidence that defendant participated in the original taking of the alleged stolen property, the conviction could not be sustained.

**2.—Same—Charge of Court—Fundamental Error.**

Where, upon trial of theft of cattle, there was no exception reserved to the court's charge, except in a motion for new trial, and appellant contended on appeal that the court should have charged on circumstantial evidence, and should have instructed the jury, that unless defendants were connected with the original taking, they would not be guilty of theft, but might be guilty of receiving stolen property, this was not such fundamental error as to call for a reversal. Davidson, Judge, dissenting.

Appeal from the District Court of Cameron. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of theft of cattle; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Webster & Green* and *E. L. Kowalski,* for appellant.—On question of fundamental error in charge of court: Smith v. State, 3 S. W. Rep.,

684; Pace v. State, 10 S. W. Rep., 761; Coleman v. State, 112 S. W. Rep., 1072; Lee v. State, 116 S. W. Rep., 1153; Duke v. State, 120 S. W. Rep., 894; Holt v. State, 125 S. W. Rep., 43; Martin v. State, 122 S. W. Rep., 558.

On question of circumstantial evidence: Colburn v. State, 132 S. W. Rep., 883; Serok v. State, 154 S. W. Rep., 557; Martinez v. State, 153 S. W. Rep., 886.

On question of insufficiency of evidence: Kaufman v. State, 159 S. W. Rep., 58; Pendley v. State, 158 S. W. Rep., 811; Menefee v. State, 149 S. W. Rep., 138.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of circumstantial evidence: Terrell v. State, recently decided.

DAVIDSON, JUDGE.—Appellants were convicted of cattle theft, the punishment of Luis Reyna being assessed at three years, and that of Nicario Reyna at four years confinement in the penitentiary.

The State's case, on the point on which this appeal hinges, was made by the testimony of the witness O'Neal. He testified that the defendant Luis Reyna and his brother were working for him in his lettuce patch; that about 10 o'clock on the morning of the day of the alleged theft a Mexican named Herrera came by where they were at work driving a yearling, which is shown to be the one alleged to have been stolen, and that Luis Reyna went to the fence and had a short conversation with Herrera. That evening the two Reynas failed to return in accordance with what he said was their contract; at least Luis Reyna had the contract to haul lettuce for him to the depot; that he did not return, and that he, O'Neal, carried the lettuce himself. Subsequently, in walking across his lettuce patch or field he discovered suspicious circumstances, and he went into the brush some distance away, and while he does not mention specifically these three parties, Herrera and the two Reynas, still the idea is conveyed he saw them doing things he did not understand exactly, and he 'phoned an officer at Brownsville, who came out. Investigating this matter they found where this animal had been butchered, and later Nicario Reyna disclosed to the officers where the hide was buried, and he went with them and they unearthed the hide. It proved to be the hide of the animal that Herrera was driving in the morning. Appellant Luis Reyna had gone out there in his wagon, and after the animal was butchered the meat was put in his wagon and hauled to his house and put under his shed. This was covered by some grass and wood, and it was found in that condition in the wagon bed by the officer. The alleged owner, Trevino, testified he lived about three and one-half miles from O'Neal's, and the butchering was about three-quarters of a mile still further on. Trevino is the alleged owner, and while the property did not belong to him, the evidence is that he had control and management of it, and the ownership, therefore, is sufficiently alleged.

Luis Reyna took the stand in his own behalf and testified in oppo-

sition to O'Neal's testimony, stating he did not have a conversation with Herrera about the animal as detailed by O'Neal, and that he had no contract with Mr. O'Neal to haul lettuce for him, and that he·worked for O'Neal until 12 or 12:30 o'clock and went home, and that evening he wanted some wood and went out to haul it. That in going along an old road he ascertained the fact that this animal was being butchered by his brother and Herrera, and he went where they were and inquired why they had killed the animal. He finally agreed he would take the meat home, which he did, by placing it in his wagon, and placing wood in the wagon over the meat and putting some grass on the wood. O'Neal testified that when he was going across his lettuce patch he heard this wagon and followed it, and that was the occasion of his ascertaining the fact that the animal was butchered. This testimony would seem to corroborate Luis Reyna that he was not present at the time of the beginning of the butchering of the animal, but under the view we take of this record this is not a very important fact, except in a general way, that it goes to show that he was not connected with· the original taking. This is the substance of the case.

The record has been read carefully to ascertain the fact if the two Reynas were connected with the original taking. If not, they could not be guilty of stealing this animal. After Herrera had taken the animal and their connection began with it after it had been driven the distance indicated, their subsequent connection with it would not make them guilty as principals. There must be evidence to connect them with the original taking in some way in order to constitute them the takers. If when Herrera took the animal he drove it as indicated by O'Neal, and the Reynas' first intimation or knowledge of that fact was the conversation between Luis Reyna and Herrera, as indicated by O'Neal, that is not sufficient to show him connected with the original taking. He might be guilty of receiving the stolen meat, if his ·first connection with the matter was where the animal was slaughtered and after it had been slaughtered. It may be that if he had an agreement with Herrera to help him slaughter the animal and went there for that purpose, he would be guilty of receiving the animal himself after it was stolen.

The court submitted the question alone of theft, giving a general formal charge on principals. A special charge was requested to the effect that unless defendants were connected with the original taking they would not be guilty; that they might be guilty of receiving stolen property. The language of the charge is not repeated, but this was the substance. The contention here is, first, the court should have charged the jury on. circumstantial evidence, and, second, should have charged the jury unless they were connected with the original taking they would not be guilty of theft, but might be guilty of receiving stolen property. There was no bill of exceptions reserved to any ruling of the court, nor was an exception reserved to the court's charge except in the motion for new trial. The writer is of opinion that it was fundamental error to submit to the jury the idea and theory of theft in this case under

the facts, and in refusing to give the other charge. It is a fundamental error that can be noticed on appeal, that a court authorizes a conviction on facts not shown by the witnesses. But be that as it may, the evidence is not sufficient to show appellants had any connection with the original taking. Herrera had evidently stolen the animal and driven it from Trevino's, three and one-half miles, and three-quarters of a mile further, where it was slaughtered, and that appellant at the time that the animal was taken, and for two hours or more after Herrera passed with the animal, was working for Mr. O'Neal. If the evidence is in doubt, it is better to charge accessory and receiving stolen property in different counts. The evidence not being sufficient, it is ordered that this judgment be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE, and HARPEh, JUDGE.—Judges Harper and Prendergast agree that the evidence is not sufficient to convict of theft, but do not agree the charge is fundamentally erroneous.